IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ERIC L HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 11-cv-00655-NKL |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ORDER**

Before the Court is Plaintiff Eric L. Hill's Social Security Complaint [Doc. # 1]. Plaintiff argues that 1) the ALJ erred in giving no weight to the opinions of Plaintiff's treating physician; 2) the ALJ's credibility determination is not supported by substantial evidence; 3) the ALJ failed to property assess Plaintiff's Residual Functional Capacity; and 4) the ALJ committed reversible error at step four of the sequential evaluation process. For the following reasons, the Court reverses and remands the decision of the Administrative Law Judge ("ALJ").

**I.      Background.**[1]

This suit involves an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. Plaintiff Hill contests the Defendant's finding that he was not disabled as of September 14, 2007.

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

## A. Medical Evidence

Plaintiff applied for benefits on July 16, 2008. (Tr. 47, 95-97). In his disability report, he alleged an inability to work due to spinal stenosis and anxiety. (Tr. 99). Plaintiff alleged that he became disabled on September 14, 2007. (Tr. 85). In February 2004, Plaintiff saw Stephen Reintjes, M.D., for neck pain, stiffness, and headaches that had been ongoing for years. (Tr. 175). Dr. Reintjes diagnosed diffuse cervical spondylosis,2 recommended physical therapy, and prescribed Celebrex3 and Robaxin4. (Tr. 174, 186, 194, 197). Diagnostic imaging showed multilevel degenerative changes and bulging discosteophyte complexes in the cervical spine, similar to findings from magnetic resonance imaging (MRI) dated 1999. (Tr. 179, 185, 196).

In March 2006, Plaintiff was evaluated at Liberty Hospital for anxiety and depression following the unexpected death of his father. (Tr. 282-288). The physical examination was normal. (Tr. 288).

On August 10, 2007, Plaintiff reported to Liberty Hospital with abdominal pain. (Tr. 224,270). The physical examination was normal, except for abdominal tenderness. (Tr. 277). Findings included normal neck, respiratory, cardiovascular, back, extremities, and neurological examinations. (Tr. 276-77).

On August 16, 2007, Plaintiff saw John Barth, D.O., for medication refills. (Tr. 212). Dr. Barth noted diagnoses of asthma, degenerative disk disease of the cervical spine, anxiety disorder, and hypothyroidism. The physical examination was normal, including normal neurological, extremities, and emotional examinations. (Tr. 212). Dr.

Barth counseled Plaintiff on the proper use of his inhalers and refilled Tranxene5 for anxiety and Vicodin for pain. (Tr. 212).

Plaintiff returned to Dr. Barth on October 30, 2007, and requested a change in medication. In particular, Plaintiff requested that Dr. Barth discontinue Tranxene and prescribe Ativan7. (Tr. 211).

On February 5, 2008, Plaintiff returned to Dr. Barth for medication refills. (Tr. 209). Dr. Barth deferred a full physical examination and noted only normal heart, lung, and extremities examinations. (Tr. 209). Plaintiff stated that he was "doing ok." (Tr. 209).

On April 25, 2008, Plaintiff requested comprehensive testing. (Tr. 208). He stated he had spinal stenosis and bulging disks for 15 years with worsening pain between his shoulder blades and headaches; concerns about the effects of smoking for 20 years; and concerns about his brain due to increased anxiety while driving. (Tr. 208). Dr. Barth deferred a full physical examination, but noted normal examinations of the eyes, heart, lungs, abdomen, and extremities. (Tr. 208).

On April 30, 2008, a MRI of the thoracic spine was normal except for "tiny disc protrusions" on the right side of the low thoracic spine, which did not cause significant spinal stenosis. (Tr. 219, 267-69). A MRI of the cervical spine showed mild central and mild foraminal stenosis in the cervical spine and multilevel broad-based disc bulges. (Tr. 215-16, 264-66). A MRI of the brain was normal. (Tr. 218, 262). Chest x-rays were normal. (Tr. 217, 261).

On July 15, 2008, Plaintiff saw Dr. Barth for concerns of throat cancer. (Tr. 207). Dr. Barth noted no mass in Plaintiff's neck. (Tr. 207).

On August 30, 2008, Corey Mayo, D.O., performed a consultative examination of Plaintiff. (Tr. 232-37). Dr. Mayo found tenderness in the cervical spine and decreased range of motion. The diagnostic impression was chronic pain, degenerative disc disease of the cervical spine, and central and foraminal cervical stenosis. Dr. Mayo found that Plaintiff had full (5/5) strength in his arms and legs. (Tr. 233-34, 236-37). Dr. Mayo also found that Plaintiff had full grip strength in his hands and was able to perform multiple fine finger motor function tests. (Tr. 233, 236). Dr. Mayo also found that Plaintiff had a normal gait, performed a heel and toe walk without difficulty, and could squat without limitation; had full ranges of motions in his shoulders, elbows, wrists, hips, and ankles and near full ranges of motion in his cervical spine, lumbar spine, and knees. (Tr. 233-34, 236-37). Dr. Mayo concluded that Plaintiff could lift and carry and push and pull 21 to 40 pounds frequently and 41 to 50 pounds occasionally; could frequently balance, stoop, crouch, kneel, climb ramps and stairs, and reach in all directions, including overhead. (Tr. 234). Dr. Mayo did not recommend crawling. (Tr. 234). The ALJ gave Dr. Mayo's opinion "moderate weight." and concluded the Plaintiff would likely struggle with the lifting thresholds opined by Dr. Mayo. (Tr. 20).

On September 15, 2008, non-examining consultant Dr. Cottone completed a psychiatric review technique form. Dr. Cottone determined Plaintiff's impairment of anxiety to be non-severe. In Dr. Cottone's opinion, Plaintiff had only mild difficulties in

4

maintaining social functioning. (Tr. 252). The ALJ concurred with Dr. Cottone's assessment. (Tr. 15).

In November 2008, Plaintiff underwent pulmonary function testing. (Tr. 257-59, 294-96, 313-15). It showed moderate obstructive changes and significant improvement with the use of a bronchodilator. (Tr. 257, 294, 313). On December 9, 2008, Plaintiff saw Dr. Barth for the results of the pulmonary functioning testing. (Tr. 301, 309). Plaintiff reported shortness of breath. Dr. Barth noted a normal examination. (Tr. 301, 309).

On April 2, 2009, Dr. Barth opined in a letter that several medical conditions prevented Plaintiff from working "a job 40 hours per week on an ongoing basis." (Tr. 302). Dr. Barth stated that Plaintiff had the following medical conditions: cervical spine disk disease and arthritis; headaches; chronic obstructive pulmonary disease (COPD); anxiety and depression; hypertension; gastroesophageal reflux disease; and hypothyroidism. (Tr. 302). Dr. Barth stated that Plaintiff had chronic neck and arm pain that interfered with Plaintiff's ability to use his arms and engage in any sustained activity. (Tr. 302). He also stated that the neck pain causes muscle tension headaches which contribute to Plaintiff's migraine headaches. Dr. Barth further stated that exacerbations of Plaintiff's COPD are very disruptive to Plaintiff's daily life and ability to work, and that at times, Plaintiff's anxiety and depression limit his ability to function in stressful situations which would preclude his return to work as a security officer. Dr. Barth noted that Plaintiff's medications alter his decision making ability and make some activities

difficult. He opined that Plaintiff's conditions are chronic and progressive, making a 40 hour work week on an ongoing basis impossible. The ALJ gave Dr. Barth's opinion no weight. (Tr. 19).

On June 1, 2009, Plaintiff underwent chest x-rays, which were normal. (Tr. 310). On December 20, 2009, Plaintiff visited Liberty Hospital with chest pain. (Tr. 334). The chest x-rays were again normal. (Tr. 334).

Plaintiff saw Dr. Barth for sinus congestion on April 20, 2009, and a sore throat on May 28, 2009. (Tr. 306-07, 342-43). On both occasions, Dr. Barth deferred full physical examinations, but noted normal examinations of the lungs and heart. (Tr. 306-07, 342-43).

Additional evidence was presented to the Appeals Council only. (Tr. 5, 363-78). In March 2006, Plaintiff sought counseling at Smook & Associates to address grief, coping, and stress related to distributing his father's estate. (Tr. 365-78). Plaintiff's last session was in June 2006. (Tr. 377).

### B. Administrative Hearing

At his administrative hearing held on April 12, 2010, Plaintiff testified that he was a 56-year-old high school graduate. (Tr. 30, 31). Plaintiff testified that he worked as a security guard for several years and last worked two-and-one-half years ago. (Tr. 31-33). Plaintiff was supported by his father's estate. (Tr. 30). Plaintiff testified that he could no longer work due to back and neck pain from spinal stenosis, bone spurs, bulging disks, arthritis, and COPD. (Tr. 33). Plaintiff testified that he experienced neck pain and

6

numbness and tingling in his arms on a daily basis. (Tr. 33). Plaintiff said he had difficulties keeping his head in a fixed position or turning his neck frequently. (Tr. 41). Neck pain caused headaches. (Tr. 41). On a good day, Plaintiff rated his pain as a six out of 10 on the pain scale. (Tr. 34-35). He said he had six to seven good days per month. (Tr. 34-35). A few days per month, he said he experienced pain at a level 10. (Tr. 35). Plaintiff took pain medication, which caused drowsiness. (Tr. 35, 42). Plaintiff said he could walk "a good distance," stand 45 minutes to an hour, sit for "quite a while," and lift and carry two gallons of milk. (Tr. 36). He had some difficulty picking up and holding objects due to numbness in his fingers that comes and goes throughout the day. (Tr. 36-37). Plaintiff was treated for general anxiety disorder with medication. (Tr. 37-38).

Plaintiff testified that he drove his car daily, watched television for five to six hours per day, prepared his meals, cared for his personal hygiene, did the laundry, mowed the yard, shopped 4 to 5 times per week, visited friends at a fish market for one-and-one-half to two hours each day, napped daily, visited friends at the VFW five times per week, and attended sports card conventions. (Tr. 31, 38-41). Plaintiff stated he had not lifted weights since 1993. (Tr. 39). Gail Leonhardt testified as the vocational expert at the hearing. (Tr. 42-45). The ALJ posed a hypothetical question to the vocational expert, assuming an individual with Plaintiff's education, experience, and vocational background who could perform light work with occasional kneeling and crawling; no twisting, stooping, or climbing of ropes, ladders, scaffolds; and avoidance of exposure to odors, gases, chemicals, dangerous unprotected machinery, unprotected heights, and vibrating

7

tools. (Tr. 43). The vocational expert testified that such an individual would be able to perform Plaintiff's past relevant work, which was the light, semi-skilled work of a security officer, as it is generally performed in the national economy. (Tr. 43-44).

### C. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, cervical stenosis, obesity, and COPD. (Tr. 14-16). The ALJ also found Plaintiff had the non-severe impairments of hypertension, gastroesophageal reflux disorder, hyperthyroidism, anxiety, and depression. (Tr. 14-15). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. pt. 404, subpt. P, app. 1, Listing of Impairments. (Tr. 16). In addition, the ALJ found that Plaintiff's subjective allegations of disabling limitations were not supported by the evidence of record. (Tr. 16-20). The ALJ found Plaintiff could perform a limited range of light work. (Tr. 16-20). Based on this ability and vocational expert testimony, the ALJ found that Plaintiff retained the RFC to perform past relevant work. (Tr. 20). Consequently, the ALJ found Plaintiff was not disabled. (Tr. 20-21).

## II. Discussion

### A. Standard of Review

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that

8

Case 4:11-cv-00655-NKL   Document 7   Filed 02/06/12   Page 8 of 12

a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted).  The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice."  *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007).  "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact."  *Id.* (quoting *Nicola*, 480 F.3d at 886).

> **B.** **Whether the ALJ Gave Sufficient Weight to the Opinion of Plaintiff's Treating Physician**

Plaintiff argues that the ALJ erred in giving no weight to the opinions of the Plaintiff's treating physician, Dr. Barth.  Plaintiff first points to the ALJ's dismissal of Dr. Barth's opinion partly on the grounds that the opinion concerned issues reserved to the Commissioner.  The Court agrees with Plaintiff that this was improper.  Social Security regulations state that "[b]ecause treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion."  SSR 96-5p.  Here, Dr. Barth did opine that Plaintiff was unable to work but also discussed this conclusion in the context of Plaintiff's symptoms, such as disruptions to his daily life as a result of his pulmonary problems and problems in functioning due to anxiety and depression.  (Tr.
9

302). Given the importance placed upon treating opinions, if the ALJ could not identify the medical basis of Dr. Barth's conclusions, it was proper to seek clarification rather than assigning Dr. Barth's opinion no weight at all.

The ALJ's failure to conduct follow-up here is particularly problematic given that the remaining medical opinions given greater weight by the ALJ are both opinions by non-treating consultants who issued their findings almost two years before the date of the ALJ's decision. Eighth Circuit case law permits an ALJ to discount a treating physician's opinion and credit a one-time consultant "(1) where the [one time] medical assessments are supported by better or more thorough medical evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Anderson v. Barnhart*, 344 F.3d 809, 813 (8th Cir. 2003).

However, neither of these criteria are met here. The ALJ does not point to any internal inconsistencies by Dr. Barth. The one-time assessments by the consulting providers also do not appear to be supported by superior or more thorough medical evidence. Consultant Dr. Mayo examined Plaintiff on only one occasion, solely in an orthopedic context. The ALJ did not even fully credit his opinion, instead assigning it only moderate weight, though it does appear to be the only medical opinion used to formulate the physical RFC. (Tr. 20). Dr. Cottone did not examine Plaintiff at all. In his psychiatric assessment, Dr. Cottone appears to rely largely upon medical records from Dr. Barth's treatment, the notes of Dr. Mayo, whose examination did not focus on Plaintiff's psychiatric health, and Plaintiff's own reports of his daily social activities. (Tr. 254).

Meanwhile, Dr. Barth treated Plaintiff's physical and mental conditions for nine years; such a long treatment history would infuse his findings with a familiarity which could not be easily replicated by a secondhand reading of treatment notes and medical records. The thoroughness of the consulting opinions is also in doubt as Dr. Barth, due to the later date of his opinion, had access to months of medical, hospital and pharmaceutical records not available to the two consultants. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) (the ALJ must not ignore recent evidence consistent with claimant's subjective complaints even if it conflicts with prior medical reports). Thus, for the reasons discussed above, the ALJ has not established the requirements necessary to disregard the opinion of a treating physician in favor of one-time consulting providers. If the ALJ felt that Dr. Barth's opinion was too conclusory to provide sufficient medical substance, she could have asked for more details from the doctor rather than dismissing his opinion entirely. Thus, the ALJ committed legal error in assigning no weight to Dr. Barth's opinion and remand is required.

### C. Other Concerns

Because the ALJ improperly dismissed Dr. Barth's opinion, the Court finds that the ALJ also improperly determined Plaintiff's RFC and it must be reformulated upon remand. Plaintiff also argues that the ALJ erred by failing to include Plaintiff's obesity in the RFC and failing to explain why she did not adopt several provisions of Dr. Mayo's opinion when calculating the RFC, in violation of SSR 96-8P. Upon remand, the ALJ should explain how she reached her conclusions on the relationship between Plaintiff's

11

obesity and any physical or mental limitations, and should also explain why she did not fully adopt Dr. Mayo's opinion and on what alternative basis she formulated the RFC.

Plaintiff also raises potential errors in the ALJ's analysis of Plaintiff's credibility. Given that the ALJ must reevaluate Plaintiff's credibility in light of her errors in analyzing the medical opinions, Plaintiff can address these concerns directly to the ALJ upon remand.

## III.     Conclusion

It is hereby ORDERED that the matter be REMANDED to the ALJ for reconsideration consistent with this Order.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  February 6, 2012
Jefferson City, Missouri